UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES H., <br><br>                Plaintiff, <br><br>   v. <br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br>                Defendant. | CASE NO. C18-5371-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REVERSED and REMANDED for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1977.[1] He graduated high school and previously worked as a tattoo artist, painter, tour guide, garage door installer and mechanic. (AR 74, 87-89.)

Plaintiff made a prior DIB claim, and received an unfavorable ALJ decision dated

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

September 22, 2015; the Appeals Council denied review and Plaintiff did not appeal.  (*See* AR 102-111, 116-18, 124.)   The decision addressed the period from January 1, 2012 through September 22, 2015.[2]

Plaintiff protectively filed the DIB application currently under consideration in October, 2016, alleging disability beginning January, 1, 2012 (AR 236.)  The claim was denied initially and on reconsideration.  (AR at 123-134, 135-149).  On September 25, 2017, ALJ Cynthia Rosa held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 66-98.)  Plaintiff amended the alleged onset date to October 1, 2016 at the hearing.  (AR 71.)  On January 4, 2018, ALJ Rosa issued a decision finding plaintiff not disabled.  (AR 10-25.)  Plaintiff timely appealed, the Appeals Council denied review (AR 1-3), rendering the ALJ's opinion the final decision of the Commissioner.  Plaintiff timely appealed that final decision to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had not engaged in substantial gainful activity since the October 1, 2016 amended onset date.  (AR at 13.)  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe: posttraumatic stress disorder (PTSD), social anxiety, major depressive disorder, degenerative disc disease of the thoracic spine with juvenile kyphosis and disc extrusions at T7-8,

---

[2] The ALJ did not give res judicata effect to this ruling pursuant to *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988), due to a change of circumstances—namely, the revision of the regulations regarding disability due to mental health impairments.  (AR 11.)  No party has disputed this determination.

ORDER
PAGE - 2

and chondromalacia of the bilateral knees. (AR at 13.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR at 14.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work as defined in 20 C.F.R. § 416.967(b), except he can occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and twist at the torso; can occasionally reach overhead bilaterally; can perform simple routine tasks with a Reasoning Level of 1 or 2, which involve no public contact and only occasional superficial contact with coworkers; he should avoid concentrated exposure to extreme cold and hazards, and needs an option to change position from sitting to standing in 20 to 30-minute intervals. (AR at 15). With that assessment, the ALJ found Plaintiff unable to perform his past relevant work. (AR at 24.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a product assembler, packager/inspector, and electronics worker. (AR at 25).

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported

by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends that the ALJ erred in: (1) rejecting the opinions of treating providers Philip McRill, M.D. and Megan Foley, DNP, PMHNP-BC; (2) rejecting Plaintiff's reports of his symptoms without providing legally sufficient reasons; and (3) failing to account in the RFC for Plaintiff's limitations in concentration, persistence and pace. He requests that the Court remand for an award of benefits, or in the alternative for further proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Evidence

Plaintiff avers error in the consideration of evidence from treating physician Dr. McRill and treating psychological nurse practitioner Megan Foley.

The regulations applicable to plaintiff's SSI claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including physician assistants, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[3] In general, more weight should be

---

[3] New regulations, applicable to claims, unlike this one, that are filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

ORDER
PAGE - 4

given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A. <u>Phillip McRill, M.D.</u>

Dr. McRill became Plaintiff's primary care physician in June, 2015. (AR 793.) However, the record contains only four notes reflecting his examinations of Plaintiff: during his initial visit (AR 792-97), on May 6, 2016 (AR 483-487), on April 3, 2017 (AR 1547-52), and on June 13, 2016 (AR 464-65). On February 7, 2017, Dr. McRill completed a form in which he identified Plaintiff's diagnoses as thoracic kyphosis, vertebral compression fractures, chronic PTSD, depression, obstructive sleep apnea and patellofemoral syndrome. (AR 656-661.) Dr. McRill opined that Plaintiff could stand and walk for less than two hours of an eight hour day, could sit four hours, and would need to change position from sitting every 10 minutes and from standing every 5 minutes. (AR 658-59.) He predicted Plaintiff would be absent from work more than four times a month. (AR 661.)

The ALJ gave Dr. McRill's statement little weight, finding that the significant limitations it proffered were inconsistent with the record, including imaging studies, Plaintiff's course of treatment, the clinical observations of multiple clinicians, and the opinions of State agency physicians Drs. Irwin and Fitterer, to which the ALJ assigned great weight. (AR 22.) The ALJ

also found that Dr. McRill did not describe any objective evidence to support his limitations, even though the form he completed had provided space to do so. (AR 23.)

The ALJ's determination that the limitations proffered by Dr. McRill are inconsistent with the record as a whole is supported by substantial evidence. First, Dr. McRill's notes of his four personal examinations of Plaintiff do not evidence a disabling level of pain. His initial examination, on June 30, 2015 noted "paraspinal tenderness" in the mid-thoracic region, but "without evidence of spasm." (AR 795.) Dr. McRill's notes for Plaintiff's second visit, on May 6, 2016 for medication consents, observe that Plaintiff "rode his motorcycle today," but reflect no examination of Plaintiff's spine. (AR 483-86.) Notes of the April 10, 2017 visit—to discuss a medication switch and the results of Plaintiff's knee MRIs—state that a switch from gabapentin to pregabalin "seems to be working." (AR 1548.) Physical examination notes merely assess Plaintiff as "alert and oriented"; Plaintiff was "referred to ortho" for further evaluation of his knee issues. (AR 1550, 1551.) Finally, notes of a June 13, 2016 visit for skin tag removal contain no examination of Plaintiff's spine or knees. (AR 464-65.)

The record as a whole likewise does not support the extreme restrictions contained in Dr. McRill's statement. Imaging of Plaintiff's thoracic spine and knees shows only mild to moderate deformities and, with respect to Plaintiff's spinal issues, no progressive worsening since the prior ALJ opinion in September, 2015 in which Plaintiff was found not to be disabled. (AR 102-111.) X-rays taken in October, 2016 show mid-thoracic spine wedging that "appears unchanged" compared to 2012 imaging, and June, 2017 X-rays show "unchanged" results compared to a 2015 study. (AR 333, 666.) Similarly, June, 2017 MRI imaging shows kyphosis and chronic wedging, but a "normal" spinal cord and "unremarkable" paraspinal soft tissues; these results differ little, if at all, from June, 2015 imaging (which in turn was "unchanged" from 2013 films). (AR 662,

1324.) Imaging of Plaintiff's knees likewise shows only mild to moderate deformities. In August, 2016, knee X-rays showed "only minimal spurring" and no effusion. (AR 334.) MRIs of both knees in March, 2017 revealed patellofemoral compartment chondromalacia, but only "trace" effusion in both knees. (AR 675, 677.)[4]

Physical examinations by other practitioners likewise did not result in findings that would support the severe restrictions suggested by Dr. McRill. Plaintiff's March, 2017 examination at the Oregon Health & Science University Neurological Surgery Spine Clinic yielded normal musculoskeletal results, with a normal gait, normal tone and motor scores of 5 out of 5. (AR 694.) Neurological and reflex results were normal throughout, with only minor exceptions. (*Id*.) Similarly, Plaintiff's November, 2016 examination by Physical Therapist Mary Clark in connection with his knee pain showed ranges of motion within normal limits, normal flexion and extension, and 5 out of 5 strength. (AR 363.) Examination by Dr. Cornelius in June, 2017 similarly yielded normal results (aside from a "slight limp"). (AR 686.)

Finally, as the ALJ found, the opinions of the State agency physicians reviewing Plaintiff's records are consistent with the objective evidence. Both Dr. Irwin and Dr. Fitterer found that, notwithstanding severe impairments, Plaintiff was capable of full time work in the light range, with postural and environmental limitations. (AR 21-22, citing AR 129-131, 143-145.)

Because the record contained contradictory opinions from non-examining State agency physicians Fitterer and Irwin, the ALJ could reject Dr. McRill's opinion for specific and legitimate reasons, supported by substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 & n.2 (9th Cir. 2006). Such reasons include inconsistency between the opinion and the physician's own notes

---

[4] As the ALJ found, Plaintiff consulted Casey Cornelius, DO regarding these results and was treated with injections; however, there is no record that Plaintiff attended the follow-up appoint scheduled with Dr. Cornelius, or sought any further treatment. (AR 18, 685-87, 680.)

ORDER
PAGE - 7

or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), or based on inconsistency between the opinion and the record as a general matter, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In this case, the ALJ properly rejected the opinion of Dr. McRill based on an absence of supportive objective evidence in the record, including in Dr. McRill's own treatment notes.

Plaintiff contends that the ALJ improperly relied upon the opinions of the State agency physicians, because those physicians did not have Plaintiff's entire record before them. (Dkt. 13 at 4-5.) However, Plaintiff's critique would apply equally to Dr. McRill's statement, which is dated approximately one month before Dr. Irwin's March 10, 2017 opinion. (AR 143, 661.) Since Dr. McRill only personally examined Plaintiff four times, his statement would necessarily have relied heavily on Plaintiff's treatment records—which covered the same time period as the records reviewed by Dr. Irwin. The ALJ did not err in relying upon the opinions of the State agency doctors, where those opinions, unlike that of Dr. McRill, were consistent with the record as a whole. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Plaintiff next avers error in the ALJ's additional basis for rejecting Dr. McRill's opinion—that it failed to provide objective reasons for the proffered limitations. (Dkt. 13 at 5.) An ALJ may discount a treating physician's opinion when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's condition] . . . as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]" *Batson v. Commissioner*, 359 F.3d

1190, 1195 (9th Cir. 2004). *See also Molina*, 674 F.3d at 1111 (ALJ may "'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); also citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not."). Having found that Dr. McRill's statement was inconsistent with the medical record, the ALJ did not err in rejecting the statement for the additional reason that it did not provide any explanation of the basis for its conclusions.

Finally, Plaintiff argues that the ALJ erred in rejecting Dr. McRill's opinion because the ALJ did not describe how he weighed factors such as length of the treating relationship. (Dkt. 13 at 5-6.) When analyzing a treating physician's opinion, the ALJ must "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). However, an "ALJ is not required to make an express statement that she considered all the factors outlined" in the regulations. *Kelly v. Berryhill*, 732 F. App'x 558, 562 n. 4 (9th Cir. 2018). These factors include "supportability" and "consistency with the record as a whole," which the ALJ here determined was dispositive. 20 C.F.R. § 416.927(c)(4). As discussed above, neither Dr. McRill's treatment notes nor the record as a whole supports the extreme restrictions proffered in Dr. McRill's statement. Substantial evidence supports the consideration of Dr. McRill's opinion.

B. <u>Megan Foley, DNP, PMHNP-BC</u>

As an "other source," Ms. Folely's opinions may be rejected for reasons germane to the opinion. *Molina*, 674 F.3d at 1108.

Ms. Foley became Plaintiff's treating Veteran's Administration (VA) psychiatric nurse

practitioner in February, 2017. (AR 1624.) She met with Plaintiff approximately monthly, for a total of 6 visits, for management of his mental health medications. (AR 1624-28, 1592-96, 1498-1502, 1428-32, 1403-04, 1881-85.) During this period, Plaintiff was also receiving weekly therapy sessions from a different therapist outside the VA. (AR 1499.) Ms. Foley completed a questionnaire on August 31, 2017. (AR 1719-23.) Ms. Foley diagnosed Plaintiff with PTSD, social anxiety disorder and major depressive disorder. (AR 1719.) She opined that Plaintiff was significantly limited in his ability to interact with others, to remember and apply information, to persist and maintain pace, to adapt and manage himself, and to maintain attention for two hours. (AR 1720-21.) Ms. Foley further opined that Plaintiff's psychological symptoms would cause him to miss between six and ten days of work per month. (AR 1723.)

The ALJ gave little weight to Ms. Folely's statement, finding that neither the record nor Ms. Foley's own treatment notes supports the extent of the limitations she proffered. (AR 19-21, 23.) Plaintiff contends that the ALJ failed to provide sufficiently specific reasons for discrediting Ms. Folely's statement, because the portion of the ALJ's opinion discussing the statement does not specify the inconsistencies.

The ALJ provided germane reasons, supported by substantial evidence, for discounting Ms. Folely's statement. First, Ms. Folely's treatment notes reflect mental status examinations with primarily normal results that conflict with the limitations contained in her statement. For example, in Plaintiff's initial visit on February 14, 2017, Ms. Foley found that Plaintiff was cooperative, calm, with normal speech; mood was "not too sad or happy"; affect was even and appropriate; thought processes were linear, logical and goal-directed; Plaintiff was oriented; his judgment was good and his insight fair. (AR 1626.) Subsequent visits were similarly normal, although with occasional variations in mood or affect. (*e.g.* AR 1594 (affect "anxious/tense"), AR 1500 (mood

ORDER
PAGE - 10

"up and down"; affect "somewhat tense), AR 1429 (mood "blah"; affect "blunted"), AR 1882 (mood anxious, but improved; affect tense). These primarily normal findings—with only a few minor deficits—are not consistent with the severe limitations opined by Ms. Foley in Plaintiff's ability to focus, interact with others and maintain attention. Furthermore, the mental status examination results from other practitioners (psychiatrists, therapists and social workers) who met with Plaintiff were uniformly normal. (AR 1478, 1509, 1514, 1581, 1886.)

The ALJ discussed the foregoing evidence in detail at AR 19-21. Plaintiff's contention that the ALJ's reasoning is deficient because that detail was not repeated in her discussion of Ms. Foley's statement (AR 23) is without merit. The Court properly considers the ALJ's decision as a whole, not solely the portion of the decision addressing a physician's opinion, the weight assigned the opinion, and the reasons for the weight assignment. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (internal citation omitted). "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. Indeed, "[e]ven when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (9th Cir. 2012) (quoted sources omitted).

The ALJ provided germane reasons, supported by substantial evidence, for the weight assigned to Ms. Foley's opinion.

Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing

reasons to reject a claimant's testimony.[5]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.  The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not fully supported.  Contrary to Plaintiff's contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

A.   Medical Evidence

The ALJ discounted Plaintiff's testimony regarding the extent of his symptoms because it was not consistent with the medical evidence and other evidence in the record.  As discussed above, the ALJ found that imaging of Plaintiff's back and knees revealed only minor deficits which, in the case of Plaintiff's spinal issues, were unchanged from imaging during the period in which the prior ALJ opinion found Plaintiff not disabled.  (AR 16-17, 333, 666, 662, 1324.)  After receiving treatment for his knee condition, Plaintiff did not attend his follow-up appointment, and has apparently not sought further treatment.  (AR 680.)  Plaintiff's physical examinations were largely normal, and not consistent with Plaintiff's allegations.  (AR 694, 363, 686.)  With respect to Plaintiff's mental health issues, the ALJ noted consistently normal mental status exams that conflicted with Plaintiff's testimony of debilitating symptoms.  (AR 19-21.)  Instead, the ALJ

---

[5] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

ORDER
PAGE - 12

found, Plaintiff's mental health notes consistently show him exhibiting appropriate social behavior toward his treatment providers. (AR at 21.) Notably, contrary to Plaintiff's assertion (and that of lay witness Angela Daniels[6]) that he has difficulty with grooming and wearing clean clothes, every treatment provider taking note of the subject describes Plaintiff as "well groomed" and/or having "good hygiene." (*e.g.* AR 413, 499, 506, 510, 1414, 1429, 1478, 1509, 1514, 1581, 1886.)

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan,* 242 F.3d at 1148.

The ALJ here rationally construed the record to support the existence of both physical and mental limitations in functioning, but not to the extent alleged by Plaintiff. The ALJ provided

---

[6] Plaintiff's briefing could be construed to argue error in the treatment of Ms. Daniels' lay witness statement. (Dkt. 13 at 15.) However, Plaintiff did not assign error to this issue; therefore, to the extent that he argues error, the issue has been waived. *See* Scheduling Order, Dkt. 12 at 2 ("Beginning on page one, plaintiff shall list the errors alleged. . . . Assignments of error that are not listed in this section of the opening brief will not be considered or ruled upon."). It appears that Plaintiff may instead be arguing that the ALJ should have credited Plaintiff's testimony because it is corroborated by the lay witness statement. (Dkt. 15 at 3.) But that argument turns the relevant case law on its head. Where an ALJ properly rejects a claimant's testimony, there is no error in rejecting similar lay witness testimony. *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

ORDER
PAGE - 13

specific, clear and convincing reasons for declining to accept Plaintiff's testimony as to the degree of his impairment.

B. <u>Activities</u>

The ALJ also found that Plaintiff's activities contradict his claims of disabling physical and psychological symptoms. First, the ALJ found that despite Plaintiff's claims of disabling pain, which he claimed worsened in 2015, Plaintiff continued to work as a tattoo artist through much of 2016. (AR 16, citing AR 255.) In addition, Plaintiff testified that he also worked in February and March, 2017 doing tattoos. (AR 75.) While the earnings did not meet the threshold for substantial gainful activity, Plaintiff's ability to continue tattooing conflicts with his testimony that his symptoms prevent any work.

In addition, the record contains references to several additional activities that are inconsistent with Plaintiff's professed limitations. First, Plaintiff told Ms. Foley and his social worker on several occasions that he was working out. In February and March, 2016, he reported going to the gym daily. (AR 519, 517, 512, 509.) In February, 2017, Plaintiff stated that he is "exercising more" and in May, 2017 reported that he "got a stationary bike and has been lifting again" and planned to join the YMCA. (AR 1628, 1593.) In addition, Plaintiff reported "going snowboarding regularly." (AR 517.) Furthermore, the ALJ noted that Plaintiff continued to ride his motorcycle in 2016 and into 2017: Plaintiff reported to Dr. McRill in May, 2016 that he "rode his motorcycle today"; Plaintiff missed an appointment with his social worker in June, 2017 because he "had taken the bike out"; and Plaintiff appeared at another appointment in May, 2017 "dressed in motorcycle riding clothes." (AR 483, 1482, 1514.) Although Plaintiff testified that he sold his motorcycle "last year," the record shows that it was not sold until July, 2017. (AR 73, 1413.) Finally, Plaintiff reported to his social worker in June, 2017 that he had "worked on his

parents' yard." (AR 1477). All of these activities conflict with Plaintiff's assertions that he cannot stand more than two minutes, cannot walk more than 20 to 40 steps and can lift no more than 20 pounds. (AR 284.)

Plaintiff argues that because none of these activities was sufficiently sustained to be transferrable to a work setting, they are not appropriate reasons for disregarding his testimony. (Dkt. 13 at 12.) However, activities undermine a claimant's allegations where they either (1) contradict the claimant's testimony, or (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ here properly considered evidence of activities contradicting plaintiff's testimony as to the degree of his impairment. *See also Molina*, 674 F.3d at 1112-13 ("While a claimant need not " 'vegetate in a dark room" ' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted).

The ALJ properly considered evidence of plaintiff's activities as contradicting his testimony as to the degree of his physical and mental impairments. *Orn*, 495 F.3d at 639. For this reason, and for the reasons discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony.

C.  Character

Plaintiff contends that the ALJ engaged in an impermissible examination of Plaintiff's character in her discussions of Plaintiff's past substance abuse and in characterizing his 2017 tattoo income (which was not yet subject to reporting requirements) as "under the table." The ALJ's

treatment of Plaintiff's symptom testimony does not raise these matters, and there is no indication that they affected her decision. However, even if the ALJ improperly relied on these issues, any error was harmless because her decision also identifies additional specific, clear and convincing reasons to reject Plaintiff's testimony—namely, that the testimony conflicts with the medical evidence and with Plaintiff's activities. *Carmickle*, 533 F.3d at 1162-63 (where ALJ errs in relying upon one of several reasons for a credibility determination, error is harmless where the remaining reasons are legally sufficient and supported by substantial evidence.)

RFC and Step Five

Plaintiff contends that the ALJ erred in failing to accommodate Plaintiff's moderate limitations in concentration, persistence, and pace into the RFC. The RFC limited Plaintiff to "simple routine tasks with a reasoning Level of 1 or 2, which involve no public contact and only occasional superficial contact with coworkers." (AR 15.) Plaintiff argues that his concentration, persistence and pace limitations cannot be captured by a restriction to simple work, because no medical opinion in the record so holds.

In *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." In that case, the ALJ's finding that a claimant had the RFC "to perform simple, routine, repetitive sedentary work," as well as a hypothetical question that reflected the same limitations, adequately incorporated limitations related to pace and other mental limitations regarding attention, concentration, and adaption that had been identified by doctors. *Id.* at 1173–76. Specifically, only one doctor had assessed whether the claimant could perform unskilled work on a sustained basis, and this doctor had concluded that the claimant could do so despite the

doctor's additional finding that the claimant had a slow pace. *Id.* at 1174–75.

Similarly, in a subsequent unpublished decision, the Ninth Circuit concluded that just as in *Stubbs-Danielson*, the ALJ did not err by limiting the claimant to "simple, routine" tasks—without any concentration, persistence or pace restriction—because one physician had found that the claimant "had difficulty concentrating but nonetheless concluded that he could perform 'simple and repetitive tasks as well as more detailed and complex ones.'" *Lawhorn v. Colvin*, 609 Fed.Appx. 449, 450 (9th Cir. 2015). The Ninth Circuit concluded that the ALJ's RFC and hypothetical questions were consistent with the restrictions identified in the medical record, and thus adequately described Lawhorn's limitations. *Id.*

Here, the ALJ relied upon the opinion of State agency psychologist Edward Beaty, Ph.D., to which he afforded great weight. (AR 22.) However, unlike the doctors' opinions in *Stubbs-Danielson* and *Lawhorn*, in which the doctors folded concentration, persistence and pace limitations into a requirement of simple tasks, Dr. Beaty also included a pace restriction. Specifically, he opined that "cl[aimant] has capacity for S[imple] R[epetitive] T[ask]s at a moderate pace for a normal workday and workweek." (AR 146.) Thus, in addition to a restriction to simple, repetitive tasks, the medical evidence credited by the ALJ also imposes a pace restriction. The ALJ erred in not incorporating this additional restriction from the medical evidence into the RFC.

This error was not harmless, because the pace limitation was not incorporated into the hypothetical to the VE, nor was the VE asked whether the jobs he identified could be accomplished at a "moderate" pace. A VE's testimony based upon an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). On remand, the ALJ shall either reconsider his reliance

ORDER
PAGE - 17

on Dr. Beaty's opinion, or revise the RFC and, if necessary, obtain additional VE testimony regarding a hypothetical that accounts for all of Plaintiff's credited limitations.

## **CONCLUSION**

For the reasons set forth above, this matter is REVERSED and REMANDED for further proceedings.

DATED this 25th day of January, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 18